## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NEIL GUY CALLAHAN,

     Petitioner,

-vs-                                    Case No.  8:12-CV-605-T-27EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.
_____/

### ORDER

     Petitioner initiated this action by filing a petition for habeas corpus relief pursuant to 28 U.S.C. Section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Doc. No. 2). Thereafter, Respondent filed a response to the petition (Doc. No. 6).  Petitioner filed a reply (Doc. No. 19).

     Petitioner alleges seven claims for relief in the petition:

    1.     The trial court erred in denying Petitioner's motion to suppress evidence based on a lack of probable cause and authority to issue the warrant;

    2.     There was insufficient evidence for the jury to convict Petitioner on all counts;

    3.     Petitioner's sentences violate double jeopardy;

    4-6.     Trial counsel was ineffective:

     a. in failing to advise Petitioner that the nature of his prior convictions would not be revealed if he elected to testify;

     b. in failing to file an adequate motion to suppress the evidence found during a search of Petitioner's home;

     c. in failing to object to several instances of prosecutorial misconduct; and

7.    The cumulative effect of trial counsel's errors deprived Petitioner of a fair trial.

## I. PROCEDURAL HISTORY

The State charged Petitioner by Amended Information with forty-five (45) counts of possession of child pornography in violation of Fla. Stat., Section 827.071(5) (Ex. 3).[1] Petitioner filed a motion seeking to suppress evidence obtained through an allegedly illegal search of Petitioner's home (Ex. 4). The motion was denied after a hearing (Exs. 5, 6). A jury found Petitioner guilty as charged (Ex. 8). The trial court adjudicated Petitioner guilty and sentenced him to consecutive terms of 5-years imprisonment on Counts 1, 3, 4, 5, 6, 8, 21, and 25, and 5-years imprisonment on the remaining thirty-seven (37) counts, to run concurrent to each other and Count 1 (a total sentence of 40-years imprisonment) (Ex. 11). Petitioner filed a direct appeal with the Florida Second District Court of Appeal, which affirmed *per curiam* without a written opinion (Ex. 13).

Petitioner next filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising four grounds for relief (Ex. 14). The state post-conviction court directed the State to respond to the first ground, denied a portion of the second ground and granted Petitioner leave to amend the remaining portion, and denied the third and fourth grounds in their entirety (Ex. 15). Petitioner filed an amended Rule 3.850 motion (Ex. 16). After the State filed a response, the state post-conviction court denied the second ground and ordered an evidentiary hearing on the first ground (Ex. 17). After the evidentiary hearing (Ex. 18), the state post-conviction court denied Petitioner's Rule 3.850 motion (Ex. 19). Petitioner appealed the denial, and the state appellate court

---

[1]References to the record will be made by citing to the particular volume and page of the Respondent's appendix. For example, "Ex. 1 at 1" refers to page one of the volume labeled Exhibit 1.

affirmed the denial *per curiam* without a written opinion (Ex. 21).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal

3

court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient

performance prejudiced the defense.[2]  *Id*. at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. See § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state *court and alerts that court to the federal nature of the claim.* 28 U.S.C. § 2254(b)(1)*; Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

6

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

7

## III. ANALYSIS

### Grounds Four, Six and Seven

In Ground Four, Petitioner contends that counsel was ineffective in failing to advise Petitioner that the nature of his prior convictions would not be revealed if he elected to testify.  In Ground Six, Petitioner complains that counsel was ineffective in failing to object to several instances of prosecutorial misconduct.  And in Ground Seven, Petitioner asserts that the cumulative effect of trial counsel's errors deprived him of a fair trial.

In state court, Petitioner raised these claims as Grounds One, Three, and Four, respectively, in his Rule 3.850 motion (Ex. 14 at 3-15).  Petitioner did not, however, present these claims in his appeal from the denial of his Rule 3.850 motion (Ex. 20).  Consequently, these claims are not exhausted for federal habeas corpus purposes.  *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of its denial); *see also Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991); *Smith v. Jones*, 923 F.2d 588 (8th Cir. 1991) (claims presented in post-conviction motion and not appealed were procedurally barred in subsequent habeas proceedings). When it is clear that an unexhausted claim would be barred in state court due to a state-law procedural default, federal courts can treat the claim now barred by state law as no basis for federal habeas relief.  *Snowden v. Singletary*, 135 F.3d at 736.[3] Therefore, the failure to appeal the denial of these claims results in a procedural default.

Claims that are procedurally defaulted are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977),

---

[3] Petitioner cannot return to state court and again appeal the order denying his Rule 3.850 motion.  *See* Fla. R. App. P. 9.110(b) (appellate court's jurisdiction of appeal proceedings to review final orders of lower tribunals shall be invoked by filing an original and one copy of a notice with clerk of lower tribunal within 30 days of rendition of order to be reviewed).

or by demonstrating that the failure to consider the claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. at 496 ("where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."). Petitioner has not shown cause and prejudice to overcome the procedural default, and he has not shown that a fundamental miscarriage of justice will occur if this Court does not reach the merits of his claims. Because Petitioner fails to proffer specific facts showing an exception to the procedural default, these claims are procedurally barred and therefore denied.[4]

## Ground One

Petitioner contends that the trial court improperly denied his motion to suppress evidence discovered pursuant to two search warrants.[5]  He argues that the April 10, 2006 search warrant was improperly authorized because there were insufficient facts presented to the issuing judge to support a finding of probable cause that the enumerated felonies of witness/victim tampering and/or stalking occurred which would justify the issuance of the warrant.  Petitioner next argues that the May 9,

---

[4]In his reply, Petitioner contends post-conviction appellate counsel's failure to raise these claims on appeal establishes cause and prejudice for the procedural default (Dkt. 19 at 1-2).  However, ineffective assistance of counsel on appeal from a post-conviction proceeding does not constitute cause to overcome a procedural bar.  *See Martinez v. Ryan*, 132 S.Ct 1309, 1320 (2012); *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).  Finally, Petitioner has not shown a fundamental miscarriage of justice that would permit the Court to consider the merits of his procedurally defaulted claims because he has offered no new evidence of his actual innocence.  *See Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (explaining that the actual innocence exception is "exceedingly narrow in scope" and requires proof of actual innocence, not legal innocence); *Schlup v. Delo*, 513 U.S. at 314-15.

[5]Law enforcement initially investigated Petitioner for possible violations of Florida's witness/victim tampering and stalking laws (*see* Ex. 1).  Based on the investigation, law enforcement applied for a search warrant for Petitioner's residence, which the judge issued on April 10, 2006 (*Id.*).  On April 11, 2006, the warrant was executed at Petitioner's residence (Ex. 2).  All of the items seized pursuant to the warrant were electronic storage media used in conjunction with Petitioner's computers (*Id.*).  While viewing those items, law enforcement inadvertently found numerous images of child pornography (*Id.*).  Based on those findings, law enforcement applied for a warrant to search the items for evidence of child pornography, which was signed by the judge on May 9, 2006 (*Id.*).

2006 search warrant was also improperly authorized because it was tainted by the initial illegal search authorized by the April 10, 2006 warrant.

Prior to his trial, Petitioner filed his motion to suppress (Ex. 4). A hearing was held and the motion was denied (Exs. 5, 6). The state trial court made explicit findings of fact on matters essential to the Fourth Amendment issue (Ex. 6). Petitioner obtained review of the issue on direct appeal (Ex. 12). The state appellate court affirmed Petitioner's convictions without a written opinion (Ex. 13).

"[W]hen the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). In order to be entitled to federal habeas review of a Fourth Amendment claim, the petitioner must demonstrate that he "was denied an opportunity for full and fair litigation of that claim at trial and on direct review." *Id*. at 495 n.37.

Petitioner was provided the opportunity for a full and fair hearing on his motion to suppress before the trial and appellate courts.[6] Additionally, Petitioner does not allege that he was not provided full and fair litigation of this claim in either the trial court or appellate court. He therefore has failed to present a cognizable claim on federal habeas review as to Ground One. Accordingly, Ground One is denied.

**Ground Two**

Petitioner contends that there was insufficient evidence adduced at trial to support his

---

[6]For the preclusion under *Stone* to apply, a state court must issue findings of fact. *See Hearn v. Florida*, 326 Fed. App'x 519, 522 (11th Cir. 2009) (unpublished). The trial court made written findings of fact (Ex. 6).

convictions. Specifically, he asserts that the State failed to prove that he knowingly possessed the forty-five (45) images of child pornography for which he was convicted. He argues that although those images were discovered within a VHS tape, compact disc, and computer hard drive found in his home, there was insufficient proof he knew that the images were contained within those items and depicted sexual activity by a child.

Respondent argues that to the extent Petitioner attempts to assert a federal constitutional challenge to the sufficiency of the evidence, it is unexhausted and now procedurally barred because it was not fairly presented as a federal claim in the state courts (Dkt. 6 at p. 28). The Court agrees.

A petitioner must present each claim to a state court before raising the claim in federal court. "A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in state courts." *Henderson*, 353 F. 3d at 891 (citation omitted). "The AEDPA requires a state prisoner to exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding." *Pearson v. Secretary, Dept. of Corrections*, 273 Fed. Appx. 847, 849 (11th Cir. 2008) (unpublished). As *Pearson* notes, federal claims must be presented in a manner that alerts the state court that "the ruling under review violated a federal constitutional right." *Id*. at 849-50. "A state prisoner does not 'fairly present' a claim to a state court if that court must read beyond. . .a brief" to find the federal claim. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

In state court, Petitioner's Initial Brief on direct appeal did not fairly present a federal constitutional claim (Ex. 15 at 20-27). The brief cited solely to state cases, none of which were decided on federal grounds (*Id*.). All of the arguments addressed Florida law (*Id*.). The basis of the argument was that the State failed to prove that Petitioner was in constructive possession, as defined

by Florida law, of child pornography because there was no evidence that Petitioner knew that pornographic images were contained within the VHS tape, CD, and computer, and knew the illicit nature of those images (*Id.*). Petitioner did not indicate in any way that he intended to raise a federal claim. Therefore, Petitioner failed to exhaust a federal claim because nothing in Petitioner's arguments alerted the state appellate court to the presence of a federal claim. *See Pearson*, 273 Fed. Appx. at 850.[7]  Consequently, Petitioner is procedurally barred from raising Ground Two in his federal habeas petition.[8]

Moreover, even if the claim were not procedurally barred, it would fail on the merits. When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Id.*; *Johnson v. Alabama*, 256 F.3d at 1172.

In Florida, "[t]o prove the crime of possession of child pornography, a person must knowingly possess a photograph, . . . representation, or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child." *Parker v. State*, 81 So. 3d 451, 453 (Fla.

---

[7]It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his federal claim because it could have and should have been raised on direct appeal. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court). Florida's state procedural rules precluding a second direct appeal, and the time limitations for bringing an appeal, bar Petitioner's returning to state court to present the claim. *See* Fla.R.App. P. 9.110(b).

[8]Petitioner has not alleged or shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has not alleged or shown that he is entitled to the fundamental miscarriage of justice exception.

2d DCA 2011) (quoting *Stelmack v. State*, 58 So. 3d 874, 875 (Fla. 2d DCA 2010) (quoting Fla. Stat., § 827.071(5))) (internal quotation marks omitted).   Petitioner does not dispute that he knowingly possessed the VHS tape, CD, and computer hard drive which contained the child pornography images.  Rather, he disputes that the State proved that he knew those items contained child pornography images, and the illicit nature of the images.

Here, the State presented sufficient circumstantial evidence from which a rational jury could infer that Petitioner knew the VHS tape, CD, and computer hard drive included images of child pornography.[9]   First, child pornography was discovered on a VHS tape, CD, and a computer hard drive found in Petitioner's home (Ex. 7 at 147-48, 167-68).  No evidence was presented which indicated that anyone other than Petitioner was in joint possession of either the home or the items within which the child pornography was discovered.  Because child pornography images were discovered within multiple items in Petitioner's home, rather than a single item, it is more likely that Petitioner knew of the presence of the pornography within those items.  Second, the VHS tape was discovered between the mattress and box spring of Petitioner's bed, circumstantial evidence that Petitioner attempted to conceal the tape because he knew it contained child pornography (*Id.* at 128). *Cf. United States v. Chalkias*, 971 F.2d 1206, 1217 (6th Cir. 1992) (noting that strange hiding places for guns may indicate concealment for an illegal purpose).  Third, the CD which contained child pornography was discovered in Petitioner's closet next to another CD that contained text information identifying Petitioner (*id.* at 188), circumstantial evidence that Petitioner knew the CD

---

[9]*See Bussell v. State*, 66 So. 3d 1059, 1062 (Fla. 1st DCA 2011) (affirming convictions for possession of child pornography where "the State put forth circumstantial evidence from which the jury could infer that Appellant was the person who downloaded the child pornography onto the family computer.").

contained child pornography.  Fourth and finally, Glenn Hayes, the computer forensics technician who examined the hard drives on the computers found in Petitioner's home, testified that he discovered child pornography on the "Connect" computer along with other information indicating that Petitioner himself had used that computer (*Id* at 169-70).  No evidence was presented which indicated that someone other than Petitioner used the "Connect" computer.

Therefore, this evidence, for which no innocent explanation was offered other than argument to the jury that Petitioner was a "pack rat" who had a few computers and numerous CDs scattered around his home, and likely did not know everything contained within all those items (*id*. at 231-43), was sufficient to allow a rational jury to find beyond a reasonable doubt that Petitioner knew the items contained child pornography images.[10]

In sum, when taken in the light most favorable to the State, the competent circumstantial evidence presented at trial was sufficient to have permitted a rational trier of fact to find that Petitioner had committed the crime of possessing child pornography under Florida law, rendering the evidence constitutionally sufficient to sustain the convictions.  *See Jackson v. Virginia*, 443 U.S. 307.  Therefore, the state appellate court's denial of this claim is not in conflict with clearly established federal law or based on an unreasonable determination of the facts.  Accordingly, Ground Two does not warrant federal habeas relief.

**Ground Three**

Petitioner contends that "the consecutive sentences totaling forty (40) years for possession [of] the same contraband is an impermissible violation of the prohibition against double jeopardy."

---

[10]With respect to the claim that Petitioner did not know the illicit nature of the images, it is readily apparent from the record that the images depicted child pornography.  For example, one video depicts a man: 1) putting his mouth on a little girl's genital area; and 2) penetrating the little girl's vagina an anus with his penis (Ex. 7 at 118). Petitioner has presented no evidence indicating that the images were anything but child pornography.

(Doc. No. 1 at p. 9).  The essence of Petitioner's argument, however, is that his conviction for 45 counts of possession of child pornography violates double jeopardy because he was punished multiple times for the same act, to wit, possessing a VHS tape, CD, and computer hard drive that contained images of child pornography.

The Double Jeopardy Clause of the United States Constitution provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause protects defendants in three situations: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; or (3) multiple punishments for the same offense.  *Jones v. Thomas*, 491 U.S. 376, 380-381 (1989).

Petitioner argues that he was punished multiple times for the same offense.  Specifically, he argues that because all the images of child pornography were held in three items, the VHS tape, CD, and computer hard drive, it was improper to charge him with more than three counts of possession of child pornography.  Petitioner's argument is unavailing.

In total, there were 45 separate images of child pornography discovered on a VHS tape, CD, and computer hard drive (See Ex. 7 at 146-50, 168).[11]  "Subsection (5) [of section 827.071] expressly states that possession of each article shall constitute a separate offense."  *Crosby v. State*, 757 So. 2d 584, 585 (Fla. 2d DCA 2000).[12]  Therefore, Petitioner did not receive multiple

---

[11]Petitioner does not dispute that 45 images of child pornography were discovered.

[12]Fla. Stat., § 827.071(5) states, in pertinent part, that:

It is unlawful for any person to knowingly possess, control, or intentionally view a photograph, motion picture, exhibition, show, representation, image, data, computer depiction, or other presentation which, in whole or in part, he or she knows to include any sexual conduct by a child. *The possession, control, or intentional viewing of each such photograph, motion picture, exhibition, show, image, data, computer depiction, representation, or presentation is a separate offense.*

punishments for a single offense.  Rather, because he possessed 45 images of child pornography, he was convicted and punished for 45 separate offenses.  Accordingly, there was no double jeopardy violation.  *See  Blockburger v. United States*, 284 U.S. 299, 302 (a defendant can be separately punished for each individual transgression of the same statute, each transgression constituting a separate offense).

The state court's rejection of this claim was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent, nor was it based upon an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Ground Three does not warrant federal habeas relief.

**Ground Five**

Petitioner contends that counsel was ineffective in failing to file an adequate motion to suppress the evidence recovered from his home.  Petitioner argues that counsel should have sought to suppress the evidence on the grounds that: 1) the allegations contained in the search warrant affidavit (supporting the April 10, 2006 warrant) were insufficient to establish probable cause to believe that Petitioner had committed any crime which would justify the issuance of a search warrant of his home; and 2) Sections 914.22 and 784.048, Fla. Stat., the statutes law enforcement believed Petitioner violated when applying for the April 10, 2006 search warrant, are unconstitutional as applied to Petitioner (Doc. No. 1 at 15).  Further, he argues that had the trial court found the April 10, 2006 warrant was improperly issued, the trial court would have suppressed the evidence obtained as a result of the May 9, 2006 search warrant (which formed the basis of the possession of child

---

(emphasis added).

pornography charges against Petitioner) as fruit of the poisonous tree.

Petitioner raised this claim in Ground Two of his Rule 3.850 motion (Ex. 14 at 5-10).[13]  The state post-conviction court denied, in part, and dismissed, in part, the claim, stating:

> In claim 2 of his Motion Defendant asserts that his trial counsel was ineffective for failing to "make an adequate motion to suppress evidence that was unconstitutionally seized."  Specifically,  Defendant asserts that, although counsel filed a motion to suppress "the second warrant" issued and executed in this case, defense counsel failed to "challenge the legality of the <u>first</u> warrant." (Emphasis in original).
>
> Defendant's Motion alleges, and the files and records support the fact that on April 10, 2006, law enforcement obtained a search warrant for Defendant's residence (the "first warrant") for the purpose of obtaining evidence "relevant to proving that a felony has been committed, to wit, FSS 914.22 Tampering With a Witness, Victim, or Informant and FSS 784.048 Stalking [sic]." *See Search Warrant Application*, a copy of which is attached, at para. 4.
>
> The record also reveals, and Defendant's Motion acknowledges that, during the course of executing the first warrant, law enforcement "seized several items of evidence including compact disks, floppy disks, and VHS tapes" and, while reviewing said items, "allegedly discovered" child pornography. *See* Motion at 8.
>
> It is undisputed that, upon the above-described discovery, law enforcement sought and obtained a second warrant, issued on May 9, 2006 (the "second warrant").  The record also supports Defendant's assertion that, while counsel filed a written Motion to Suppress Evidence that was heard at hearing wherein counsel argued evidence seized as a result of the second warrant was unlawfully obtained, no such motion was filed or argument raised contesting or challenging the first warrant.
>
> Based upon the foregoing, the Court finds the record conclusively supports Defendant's factual assertions that counsel did not challenge the legality or propriety of the first warrant. However, the analysis does not stop there.  As stated in <u>Zakrzewski v. State,</u> 866 So. 2d 688 (Fla. 2003)(citation omitted): "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious."  The claim fails this requirement.

---

[13]In the Rule 3.850 motion, Petitioner also asserted that counsel was ineffective in failing to argue that the April 10, 2006 search warrant "did not comport with the provision of section 933.02, Fla. Stat." (Ex. 14 at 10).

According to the Defendant, his trial counsel was ineffective for failing to challenge the legality of the first warrant by failing to argue: (1) "the allegations of Sgt. Klinger did not constitute probable cause for the issuance of the first warrant; (2) counsel failed to argue that §§914.22 and 784.048, Fla. Stat.[,] are unconstitutional as applied to the defendant; and (3) counsel failed to argue that the first warrant's issuance did not comport with the provisions of section 933.02, Fla. Stat." (Emphasis in original). Motion at 9-10.

First, a review of Sgt. Klinger's Statement of Facts Constituting Probable Cause, a copy of which is attached, establishes there was ample probable cause for the issuing magistrate to find the place to be searched contained "evidence relevant to proving a felony had been committed." *See* Section 933.02(3), Fla. Statutes. Therefore, any argument that the warrant was not supported by probable cause would have been meritless. Accordingly, because there would have been no basis for counsel to argue that "the allegations of Sgt. Klinger did not constitute probable cause for the issuance of the first warrant," counsel cannot be ineffective for failing to do so. Based on the foregoing, this claim is **DENIED**.

Secondly, and for these same reasons, Defendant's third allegation stated herein, that his trial counsel was ineffective for failing to "argue that the first warrant's issuance did not comport with the provisions of section 933.02, Fla. Stat.," must also fail. *See* Section. 933.02(3), Fla. Statutes. Accordingly, this claim is **DENIED**.

Lastly in response to Defendant's claim that his trial counsel was ineffective for failing to "argue that §§.914.22 and 784.048, Fla. Stat.[,] are unconstitutional as applied to the defendant," the Court finds Defendant fails to set forth any factual or legal support for such a claim. Accordingly, said claim is **DISMISSED with leave to amend** the claim within sixty (60) days of the date of this Order or the claim will be forever barred thereafter.

(Ex. 15 at record pp. 91-92) (emphasis in original) (footnote omitted).

Petitioner raised this claim again in Ground Two of his amended Rule 3.850 motion (Ex. 16).

In denying the claim, the state post-conviction court stated:

Defendant, in his Amended Motion, reiterates all 4 claims — with only two observed substantive changes, both contained in claim 2.

First, wherein Defendant originally claimed that defense counsel was ineffective for not arguing that, "(3) counsel failed to argue that the first warrant's issuance did not comport with the provisions of section 933.02, Fla. Stat.", (Emphasis in original), Motion at 10, Defendant now argues his trial counsel was

ineffective because, "(3) counsel failed to argue that the first warrant's issuance did not comport with the provision of section 933.18(6), Fla. Stat." Amended Motion at 9.

Second, Defendant has added an argument in support of his contention that his trial counsel was ineffective for not arguing that Sections 914.22 and 784.048, Fla. Statutes, were unconstitutional as applied to him.

Because the Court originally denied claim 2, subpart (3), without leave to amend, Defendant's new subpart (3) that references Section 933.18(6) instead of Section 933.02 is viewed as raising a new ground for relief that is not procedurally barred at this point and, therefore, the Court addresses same on its merits as well as claim 2, subpart (2), as amended.

After reviewing Defendant's arguments and contentions related to his new claim 2, subpart (3), regarding Section 933.18(6), Fla. Statutes, the Court finds its original finding as stated in its May 27, 2009 Order on Defendant's Motion for Postconviction Relief and Order to Show Cause regarding Section 933.02, Fla. Statutes, is equally applicable to Defendant's new claim, and restates same herein:

> [A] review of Sgt. Klinger's *Statement of Facts Constituting Probable Cause*, a copy of which is attached, establishes there was ample probable cause for the issuing magistrate to find the place to be searched contained 'evidence relevant to proving a felony had been committed.' *See* Section 933.02(3), Fla. Statutes. Therefore, any argument that the warrant was not supported by probable cause would have been meritless. Accordingly, because there would have been no basis for counsel to argue that 'the allegations of Sgt. Klinger did not constitute probable cause for the issuance of the first warrant,' counsel cannot be ineffective for failing to do so. Based on the foregoing, this claim is **DENIED**.

Accordingly, Defendant's claim regarding Section 933.18(6), Fla. Statutes, is likewise **DENIED**.

In his amended claim 2, subpart (2), Defendant argues that his trial counsel was ineffective for failing to argue that Sections 914.22 and 784.048, Fla. Statutes, were unconstitutional as applied to him because said statutes are "void for vagueness as applied to the facts alleged by Sgt. Klinger in his probable cause affidavit." *See Defendant's Memorandum of Law in Support of his Motion for Postconviction Relief,* at 13. For the same reasons expressed above, the Court finds this claim is without legal merit. Accordingly, Defendant's amended claim 2, subpart (2), is **DENIED**.

(Ex. 17 at record pp. 167-68) (emphasis in original).

Petitioner appealed the denial of this claim. However, on appeal Petitioner challenged the denial solely on the ground that the post-conviction court erroneously found that the April 10, 2006 search warrant was supported by probable cause (Ex. 20). He did not challenge the denial on the ground that Sections 914.22 and 784.048, Fla. Stat., are unconstitutional as applied to him (*Id.*). The appellate court affirmed the denial *per curiam* without a written opinion (Ex. 21); *Callahan v. State*, 80 So. 3d 1028 (Fla. 2d DCA 2012) [table].

Because on appeal Petitioner did not argue that counsel was ineffective in failing to move to suppress the evidence on the ground that Sections 914.22 and 784.048, Fla. Stat., are unconstitutional as applied to him, the claim is unexhausted. *See Pruitt*, 348 F.3d at 1358-59 (to exhaust a claim, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues *by invoking one complete round of the State's established appellate review process*, including review by the state's court of last resort, even if review in that court is discretionary.") (citation and internal quotation marks omitted) (emphasis added); *Duncan v. Henry*, 513 U.S. at 366 ("[m]ere similarity of claims is insufficient to exhaust"); *Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").[14] State rules bar Petitioner from returning to state court to challenge the denial of his ineffective assistance of counsel claim on this ground in a second appeal of the denial of the Rule 3.850 motion. *See* Fla. R. App. P. 9.141(b)(3)(C). Petitioner's failure to assert this issue on post-conviction appeal results in the default of this issue. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the

---

[14]Under state procedural rules, to obtain appellate review, Petitioner was obligated to brief this issue. *See* Fla. R. App. P. 9.141(b)(3)(C).

motion).

Petitioner fails to demonstrate cause and prejudice excusing his default. *Carpenter*, 529 U.S. at 451; *Carrier*, 477 U.S. at 495-96. He neither alleges nor shows that the fundamental miscarriage of justice exception applies. *Henderson*, 353 F.3d at 892. Because Petitioner fails to proffer specific facts showing an exception to procedural default, Petitioner's claim that counsel was ineffective in failing to move to suppress the evidence on the ground that Sections 914.22 and 784.048, Fla. Stat., are unconstitutional as applied to him is procedurally barred from federal review.

Moreover, even if the claim were not procedurally barred, the claim would fail because it is vague and conclusory. Petitioner contends that counsel was ineffective in failing "to argue that §§914.22 and 784.048, Fla. Stat. are unconstitutional as applied to the Defendant." (Doc. No. 1 at p. 15). Petitioner has not, however, advanced any facts or argument demonstrating how the statutes are unconstitutional as applied to him. Vague, conclusory allegations are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel).

To the extent Petitioner contends that counsel was ineffective in failing to challenge the April 10, 2006 search warrant on the ground that the affidavit supporting the search warrant was insufficient to establish probable cause, the contention fails on the merits. The search warrant affidavit contained matters sworn to by Sgt. Kingler, who attested as follows:

> I, Sergeant Gary Klinger, am a Deputy Sheriff employed by the Polk County Sheriff's Office in Polk County, Bartow, Florida; and have been so employed since February 1981. I have investigated or participated in the investigation of hundreds of criminal offenses, including homicides, child abuse and molestation, sex offenses, assaults, robberies, thefts, burglaries, frauds, and narcotic violations. I am presently assigned to the Special Victims Section, Child Protection Referral Unit of the Bureau

of Criminal Investigation, where my responsibilities include the supervision and investigation of crimes related to child abuse and the reports of child abuse received from the Department of Children and Families. I have personally participated in the investigation of child abuse, particularly child abuse investigations that involve the use of the Internet. I have attended schools - Harnessing the Internet Pedophile presented by the Public Safety Institute, Institute of Police Technology and Management, University of North Florida and Protecting Children Online/Unit Commanders Policy Training presented by The National Center for Missing and Exploited Children. I have participated in the writing and execution of numerous search warrants.

Tampering with a witness, victim, or informant is defined as: FSS914.22 a person who knowingly.....engages in misleading conduct toward another person....with intent to cause or induce any person to....testify untruthfully in an official investigation or official proceeding. An official proceeding need not be pending, or about to be instituted at the time of offense.

Stalking is defined as: FSS 784.048(2) any person who willfully, maliciously, and repeatedly....cyber stalks another person. Cyber stalk F.S. 784.048 (1) (d) means to engage in a course of conduct to communicate, or to cause to be communicated, words, images or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose.

The term "computer", as used herein, is defined as "an electronic, magnetic, optical, electromechanical, or other high speed data processing device performing logical or storage functions and includes any data storage facility or communications facility directly related to or operating in conjunction with such device (i.e. keyboard, mouse, monitor, printer, etc.) Further, the term "computer" as used herein, refers to the box that houses the Central Processing Unit (CPU).

On March 10, 2006 the Child Protection Referral Unit (CPR) received a child abuse report from the Department of Children and Families. The report of child abuse was called in by Shelly Burgess living in Ashville, Ohio. Ms. Burgess reported that she was concerned about a 15 year old female, Kelli that she had met in a Christian chat room. Ms. Burgess said Kelli had asked for advice because of something that happened to her and her 5 year old sister, Dory. Kelli told Burgess that she was acting out sexually on her sister, Dory and that her father had caught them. Now, she said, her father refuses to talk with her. As the chat progressed Kelli told Burgess that the 5 year old sister, Dory had given their father oral sex while the father was sleeping. The father woke up and caught the 5 year old and now won't talk with her either. Also during the chat Kelli told Burgess that she (Kelli) was using an adult sex toy on the 5 year old sister. Ms. Burgess tried to counsel Kelli and convinced Kelli to give her a phone number. Burgess asked Kelli if she would mind if Burgess

contacted the father. Kelli said she didn't mind and provided the phone number of 863-248-2151. Ms. Burgess called the number and spoke with a man who identified himself as Frank Remington. Frank told Burgess that the mother had died two years ago of cancer and he was alone with the children. After the conversation Ms. Burgess became concerned for the health and welfare of the children and called the Child Abuse Hotline in Tallahassee, Florida.

An investigation was started immediately by the Department of Children and Families and by the Polk County Sheriff's Office, Child Protection Referral Unit. The phone number provided by Ms. Burgess (863-248-2151) is owned by Vonage, Inc. A subpoena was sent to Vonage for subscriber information. I spoke with Ms. Burgess by phone and she emailed a copy of the chat logs that she had saved. Ms. Burgess said that she has not been able to sleep since she talked with Kelli in the chat room. She was really concerned for their safety.

When I received the mailed chat log I determined the email address of Frank Remington to be frankreming@Yahoo.com. I sent a subpoena to Yahoo, Inc. for subscriber information and the last log-on IP address. When the subpoena information was returned from Yahoo it listed a subscriber name of Frank Remington, Beverly Hills, California with an IP address of last log-on as 24.144.122-108. A check of the IP address shows it belongs to Earthlink, Inc. dba Mindspring. Inc. I sent a subpoena to Earthlink for subscriber information of that particular IP address. The subscriber information came back to Neil Callahan #23 Lee Ave, Lakeland, Florida. Subscriber information from Vonage,. Inc. also came back to Callahan with the same address information. A check on the FDLE website of Sexual Offenders and Predators shows Neil Guy Callahan #23 Lee Ave, Lakeland, Florida as a registered sexual predator. While inside his residence, the place to be searched, I observed his computer, the same to be searched, and next to it a half empty jar of Vaseline.

On March 22, 2006 I drove to #23 Lee Ave, Lakeland and spoke with Neil Callahan. He readily admitted that he is a registered sexual predator and is off probation. He said he chats with people from all over the world and role plays as a 15 year old girl. He said there have never been any children at his home, nor does he go around places where children might be. He says he fantasizes about children and has no business being around them (A report written by Deputy Hillsgrove in 2004 reads that she found Callahan's car parked near a trail in a wooded area that children walk to a nearby elementary school. Callahan could not be located.). Callahan said he was visited by the FBI a couple of years ago and was told that he was not breaking any laws by role playing as a child on the Internet. I checked with FBI Agent Deana Clark and she could not find Callahan's name in any of their data bases where contact had been made for any reason.

On March 23, 2006 Cynthia Sleep 7748 Broken Wagon Way Prescott Valley,

Arizona called the Polk County Sheriff's Office to report that she was chatting with a man by the name of Frank Remington. Frank Remington wanted Sleep to come to have an orgy with his 15 year old and 6 year old daughters. Sleep said she tried to talk him out of it, but realized he was persistent in having sex with his daughters and her at the same time. Ms. Sleep became concerned for the safety and well being of the daughters and called PCSO. Deputy Reckart responded to the call and traveled to Callahan's residence, but was unable to get anyone to answer the door. Deputy Reckart called me and I advised her of what I had learned from the previous report.

I called Cynthia Sleep and spoke with her about the incident She said she had started an on-line relationship with Frank Remington and spoke with him in the chat room and on the phone. That is how she knew his address. She said that when Frank began talking about incest and was insisting on having an orgy she told him he was sick, needed help, and called the Sheriff's Office. Ms. Sleep wrote in her chats that she wanted a relationship with Frank, but was not willing to meet his demands of having an orgy with him and his children. The chat log clearly shows he was using the relationship and the threat of breaking it off to persuade Ms. Sleep to meet his demands for an orgy.

When I spoke to Cynthia Sleep on the phone and advised her there were no children, nor was Frank Remington a real person, she was relieved. She had believed up to that point that the people were real and was alarmed that the children were in danger.

Callahan engaged in misleading conduct to both victims, Burgess and Sleep as described in FSS 914.22. Callahan had several chat conversations with both parties (see exhibit #B) and talked with both over the phone. Callahan repeatedly and maliciously harassed and stalked Ms. Burgess and Ms. Sleep and caused substantial emotional distress for no legitimate purpose as described in 784.048.

Your affiant believes that the computer and other electronic storage media in the residence has been used to commit a crime and does contain information relevant to proving a crime has been committed. Wherefore your affiant prays that a search warrant shall be issued based on above facts and circumstances.

(Ex. 1 at record pp. 101-03).

        "The Fourth Amendment to the U.S. Constitution provides, 'no Warrants shall issue, but

upon probable cause . . . .'"  *United States v. Robinson*, 202 Fed. Appx. 434, 435 (11th Cir. 2006)

(unpublished) (quoting U.S. CONST. Amend. IV).   "To establish probable cause, an affidavit

submitted to obtain a search warrant must state facts that are 'sufficient to justify a conclusion that

evidence or contraband will probably be found at the premises to be searched. . . .Because the warrant application typically focuses on whether the suspect committed a crime and whether evidence of the crime will be found at his home or business, we have held that the affidavit must contain 'sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched.'" *Id.* at 436 (quoting *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002)).

The state court reasonably concluded that Sgt. Klinger's affidavit contained sufficient information to provide probable cause to issue the April 10, 2006 warrant to search Petitioner's computers and associated storage media in his home for evidence that Petitioner had committed the offense of cyberstalking in violation of Section 784.048, Fla. Stat.[15]  Because the affidavit provided a substantial basis for a finding of probable cause and issuance of the search warrant, there was no basis for Petitioner's counsel to challenge the search warrant on the ground that the affidavit failed to provide a basis for a finding of probable cause.  Consequently, it was not objectively unreasonable for the state court to conclude that Petitioner's counsel was not ineffective in failing to challenge the April 10, 2006 search warrant on the ground asserted by Petitioner.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel cannot be ineffective for failing to raise a meritless claim).

Accordingly, Ground Five does not warrant federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be

---

[15]Section 784.048(2) provides, in pertinent part, that "[a] person who willfully, maliciously, and repeatedly. . .cyberstalks another person commits the offense of stalking. . . ."  Section 784.048(1)(d) states that "[c]yberstalk" means to engage in a course of conduct to communicate, or to cause to be communicated, words, images, or language by or through the use of electronic mail or electronic communication, directed at a specific person, causing substantial emotional distress to that person and serving no legitimate purpose."  Under Florida law, "[c]yberstalking entails harassment by means of electronic communications" and "[h]arassment is a course of conduct directed at a specific person that causes substantial emotional distress . . . and serves no legitimate purpose. . . ."  *Murphy v. Reynolds*, 55 So. 3d 716, 717 (Fla. 1st DCA 2011) (citations and internal quotation marks omitted).

without merit.

It is therefore **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED**.

2. The Clerk of the Court shall enter judgment accordingly and close this case.

3. This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right.[16] Accordingly, a Certificate of Appealability is **DENIED** in this case.  And because Petitioner is not entitled to a Certificate of Appealability, he is not entitled to proceed on appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on March 25, 2015.

Charlene Edwards Honeywell
United States District Judge

Copy to: Counsel/Parties of record

---

[16]The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  *See* Rule 11 of the Rules Governing Section 2254 Cases In the United States District Courts.